(97 South. 751)

No. 26163.

HENDERSON COTTON OIL CO v. LOUISIANA RY. & NAV. CO.

In re LOUISIANA RY. & NAV. CO.

(Oct. 16, 1923.)

*(Syllabus by Editorial Staff.)*

Carriers ⬅18(3)—Appeal to Court of Appeal lies from judgment based on allowance of refund to shipper by Public Service Commission.

Where the Public Service Commission ordered a carrier to pay a shipper's claim for a refund, and the shipper brought suit thereon in the district court, which rendered judgment for plaintiff, the suit was not of the class referred to in Const. 1921, art. 6, § 5, relating to suits brought against the Public Service Commission contesting its orders fixing rates, etc., and providing for a summary trial, but was within Act No. 175, of 1912, § 8, declaring that, if a railroad fails to comply with an order of the Commission for the payment of money, complainant may file suit which shall proceed in all respects like other civil suits for damages, and defendant therein is entitled to appeal to the Court of Appeal.

Action by the Henderson Cotton Oil Company against the Louisiana Railway & Navigation Company. Judgment for plaintiff, de-

fendant's appeal to the Court of Appeal was dismissed, and a transfer of the appeal to the Supreme Court refused, whereon defendant applies for writs of certiorari and mandamus to compel the Court of Appeal to reinstate the appeal or to transfer it to the Supreme Court. Peremptory writ of mandamus issued.

Wise, Randolph, Rendall & Freyer, of Shreveport, for relator. ·

LAND, J. Plaintiff instituted suit in the district court of Caddo parish against defendant company to recover the sum of $1,168.83, claiming that said amount was due it·as a refund on certain payments of freight made by plaintiff to defendant on shipment of cotton seed and cotton seed products outbound from Shreveport to New Orleans in intrastate movements under a provision in the defendant's tariff, which it is claimed provides for such refund. Petitioner in a proceeding before the Public Service Commission had presented its claim to that body with the result that said body entered its order directing the defendant to pay petitioner said sum. Defendant filed its answer to plaintiff's demand in the district court of Caddo parish, denying its indebtedness to plaintiff, denying that any refund was due plaintiff under defendant's tariffs, and further denying the right and authority of the Louisiana Public Service Commission to enter the order upon which the suit was based in the district court, averring said order to be in direct violation of the law against discrimination in favor of shippers.

Judgment was rendered in the district court in favor of plaintiff for the amount claimed, and defendant appealed the case to the Court of Appeal of the Second Circuit of this state.

Viewing the issue involved in this suit. as a contestation of the validity of an order of the Louisiana Public Service Commission by defendant company, the Court of Appeal, ex mero motu, dismissed the appeal ·on the ground that defendant's right of appeal arose under section 5 of article 6 of the Constitution of 1921, and should be direct to the Supreme Court from the judgment of the lower court and be made returnable within 10 days after the granting of the appeal.

The appeal in this case was granted on January 24, 1923, and made returnable to the Court of Appeal on March 12, 1923, 47 days from the date of the order of appeal. Holding that the time for the return of such appeal ·had expired, and that the right to appeal had been lost, the Court of Appeal also declined to transfer the appeal to this court.

Application for rehearing having been timely made and refused, relator prays that a writ of mandamus issue to the honorable judges of the Court of Appeal, ·commanding them to reinstate the appeal of relator on the docket of their honorable court, or, in the alternative, to transfer the appeal herein taken to this court.

Relator contends that plaintiff's suit is simply one for a money judgment for $1,168.83, and clearly is the action granted by section 3 of Act 175 of 1912, and that appeals in such cases may be taken, either suspensively or devolutively, in all respects like other civil suits.

Section 5 of article 6 of the Constitution of 1921 provides that—

"The orders of the Commission fixing or establishing any rate, fare, toll or charge for any commodity furnished, service rendered, or to be rendered, by any common carrier or public utility named herein, * * * shall go into effect at such time as may be fixed by the Commission, and shall remain in effect and be complied with, unless and until set aside by the Commission, or by a final judgment of a court of competent jurisdiction, in a suit setting aside and annulling the same."

In the second paragraph of section 5 of said article it is provided that—

"All cases contesting orders of the Commission, both in the trial and appellate courts, shall be tried summarily and by preference over all

[other] cases, and may be tried either in chambers, or at term time. Appeals from the decisions of the trial court shall be direct to the Supreme Court, and shall be returned within ten days after the granting of the appeal."

The orders of the Commission referred to in said section of said article are those "fixing or establishing any rate, fare, toll or charge."

The contesting of such orders necessarily is a matter affecting the public interest, and the framers of our present Constitution have, therefore, wisely provided that suits of this character "shall be tried summarily and by preference over all cases," as not only public transportation may be seriously crippled by confiscatory rates, but also the general public may suffer loss and inconvenience from the imposition of rates unreasonably high.

And, that there may be no unnecessary delay in the trial and decision of such cases, it is provided that they may be tried "either in chambers, or at term time," and that the appeals shall be "direct to the Supreme Court," from the judgment of the lower court and made returnable "within ten days" after the appeal is granted.

The class of suits referred to in said article and section are suits brought against the Public Service Commission, contesting its orders fixing rates, fares, tolls or charges. A mere suit for a money judgment is of an entirely different character. It does not affect the general public, or the public interest, although the money to be paid may be under the order of the Public Service Commission. It is a matter affecting private interests only. Ordinarily, there is no necessity for unusual preference or summary proceedings in such cases. The Legislature has therefore provided in the latter class of cases, where mere private interests are concerned, for trials in the courts as in ordinary cases.

Section 3 of Act 175 of 1912 declares:

"That if the railroad * * * does not comply with an order of the Commission for the payment of money within the limit fixed in said order, the complainant * * * may file in any court of competent jurisdiction in the judicial district in which he resides," etc., "a petition setting forth briefly the causes for which he claims damages, and the order of the Railroad Commission in the premises. Such suit shall proceed in all respects like other civil suits for damages, except that on the trial of such suit the finding and order of the Railroad Commission of Louisiana shall be prima facie evidence of the facts therein stated."

The suit against relator in the District court of Caddo parish falls clearly within the scope of section 3 of said act, and relator is therefore entitled to its appeal to the Court of Appeal of the Second Circuit.

It is, therefore, ordered, adjudged, and decreed that a peremptory writ of mandamus issue to the Honorables Charles V. Porter, D. N. Thompson, and J. B. Crow, Judges of the Court of Appeal, Second Circuit of Louisiana, commanding them to reinstate the appeal of relator on the docket of their honorable court, there to be proceeded and dealt with in due course according to law and the rules of said court.